COURT OF CHANCERY
OF THE
STATE OF DELAWARE

ABIGAIL M. LEGROW
MASTER IN CHANCERY

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Draft Report:  July 7, 2015
Exceptions Submitted:  September 21, 2015
Final Report:  November 3, 2015

Charles Snyderman, Esquire
The Snyderman Law Firm
11 Middleton Drive
Wilmington, DE 19808

Donald L. Gouge, Jr., Esquire
Donald L. Gouge, Jr., LLC
800 N. King Street, #303
Wilmington, DE 19801

> Re:  *Summers, et al. v. Walnut Ridge Community Association, Inc.*
> C.A. No. 8599-ML

Dear Counsel:

The plaintiffs filed this action challenging their obligation to pay a portion of the costs incurred by a community association to improve a private road in the neighborhood where the plaintiffs live.  The defendant – the community association – seeks summary judgment on the plaintiffs' claim.  Because the undisputed facts show the plaintiffs are obligated to pay the costs assessed by the association, I recommend that the Court grant the defendant's motion.  This is my final report.

## BACKGROUND

Unless otherwise indicated, the following facts are not in dispute. Walnut Ridge is a subdivision consisting of 18 single-family homes serviced by a private road (the "Private Road"). The subdivision originated in 1955, when Daniel B. Friel and his wife, Helen J. Friel, subdivided their land into 18 lots and sold the lots for the purposes of residential development. According to the original deeds included in the record, the Friels subdivided their property subject to the condition that the owner of each lot would bear a "1/18[th] share of the cost, care, maintenance, and up-keep of said 50 foot wide right of way as laid out in its entirety within this subdivision."[1]

The plaintiffs, Van and Margaret Summers ("the Summers"), purchased lot 1 in Walnut Ridge in 1996.[2] The Summers' deed specifies that they must pay a "1/8[th] [sic] share of the care, maintenance, and up-keep of the [Private Road]."[3] The Walnut Ridge Community Association (the "Association") was formed in

---

[1] *See* Def.'s Reply in Supp. of Mot. for Summ. J. (hereinafter "Def.'s Reply") Ex. 3. Although the Defendant represents that this exhibit encompasses all of the "dispositive deeds from the Friels," the exhibit appears only to contain the original deeds for lots 1, 2, 5, 7, 8, 12, 14, and 15. *Compare* Def.'s Reply at 2 *with id.* Ex. 3. Because the issue of what appears in any of the deeds other than the plaintiffs' deed is immaterial to my recommendation, it does not preclude summary judgment.

[2] Def.'s Mot. for Summ. J. (hereinafter "Motion") Ex. 2.

[3] *Id.* Although the Summers' deed refers to a 1/8[th] share, that appears to be a typographical error. There is no dispute that there are 18 lots in Walnut Ridge and that the original deeds granted by the Friels when they subdivided the property imposed on each lot an equal share of the costs associated with the Private Road. The Association only billed the Summers for 1/18[th] of the cost of the work to the Private Road.

1958.[4] Since that time, the Association has overseen a number of relatively minor projects involving the Private Road. The most expensive such project was less than $10,000 total. In 2007, the Association assessed each homeowner $1,540 to fund road work. On all those previous occasions, the cost was shared by each of the homeowners, including the Summers or their predecessors-in-interest.[5]

In 2011, the Association resolved to evaluate "the necessity of repaving the community road."[6] After considering different options, the Association sought bids from contractors. The Association ultimately contracted with Vandemark & Lynch to rehabilitate and repave the entire Private Road (the "Road Project").[7] To pay the cost of the Road Project, the Association assessed the owners of each lot $10,200.[8] The assessment was approved by all the homeowners present for the meeting, except for the Summers, who voted against the resolution.[9]

The Summers filed this action on May 29, 2013, seeking a declaratory judgment that the Association does not have the authority to assess the Summers a portion of the Road Project and that the Summers therefore are not obligated to pay the assessment. The Association filed its motion for summary judgment on

---

[4] *Id*. Ex. 1.
[5] *Id*. at 2.
[6] *Id*. at 2 & Ex. 3 at WR14, WR17.
[7] *Id*. Ex. 3 at WR14, Ex. 4.
[8] Verified Complaint ("Compl.") ¶ 10.
[9] Motion Ex. 3 at WR12.

December 9, 2014. For the reasons that follow, I believe the Association is entitled to judgment as a matter of law.

## ANALYSIS

Summary judgment should be awarded if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[11] A party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists.[12] If the movant makes such a showing, the burden then shifts to the non-moving party to submit sufficient evidence of a genuine factual issue, material to the outcome of the case, that precludes judgment before trial.[13]

---

[10] *Twin Bridges Ltd. P'ship v. Draper*, 2007 WL 2744609, at *8 (Del. Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).
[11] *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).
[12] *Johnson v. Shapiro*, 2002 WL 31438477, at *3 (Del. Ch. Oct. 18, 2002).
[13] *Id.*; *Conway v. Astoria Fin. Corp.*, 837 A.2d 30, 36 (Del. Ch. 2003).

**A. The Summers are obligated to pay 1/18th of the cost of the care, maintenance and up-keep of the Private Road.**

The undisputed facts of this case show that the Summers' deed, and the deeds within their chain of title, require them to pay a 1/18th share of the care, maintenance, and up-keep of the Private Road.[14] The Summers cannot, and do not, dispute that the restriction exists in both their deed and the chain of title for their lot, but nonetheless argue that there are disputed issues of fact regarding whether deeds to other lots within the subdivision contain the same restriction, pointing to two current deeds that do not contain language regarding the costs of the Private Road. The Summers do not explain why that factual dispute is material to the Association's motion. Whether owners of other lots are obligated to pay a share of the costs for the care, maintenance, and up-keep of the Private Road does not alter the restriction in the Summers' deed.[15]

Similarly, the Summers argue that the current deeds for the lots within Walnut Ridge contain inconsistent metes and bounds descriptions of the Private Road. The Summers do not explain, however, why that factual dispute bears on their obligation to pay the assessment relating to the Road Project. The Summers

---

[14] *See* Def.'s Reply Ex. 4.

[15] In any event, the owners of the 17 other lots in Walnut Ridge all paid the assessment associated with the Road Project, and do not appear to contest their obligation to do so. The record indicates the deed restriction at issue appears in the chain of title for each of these lots. *See* Def.'s Reply Ex. 2.

do not dispute that the metes and bounds description in their deed corresponds to the Private Road on which the work was done. Again, the existence or absence of a reciprocal obligation in the deeds of other owners within the subdivision does not alter the plain language of the obligation in the Summers' deed.

### B. The Road Project fell within the meaning of "care, maintenance and up-keep."

Perhaps recognizing that the factual disputes on which they rely are not material to the issues before the Court, the Summers devote most of their opposition to the motion to arguing that the Road Project does not fall within the meaning of "care, maintenance and up-keep." According to the Summers, the cost of the Road Project, particularly when compared to previous projects undertaken by the Association and the alternatives the Association considered, "makes it obvious that the project was a major improvement and reconstruction of the road, not maintenance."[16]

Whether the Road Project is a "major improvement," as opposed to "maintenance," is a factual dispute. For purposes of the pending motion, however, I will accept that the Road Project is a "major improvement." From that premise, the Summers summarily conclude that because a "major improvement" is not "maintenance," the Road Project does not fall within the scope of the restriction

---

[16] Pls.'s Opp'n to Mot. for Summ. J. ("Opp'n") at 3.

requiring the Walnut Ridge owners to share the costs of the Private Road. In support of that argument, the Summers cite the settled principle that restrictive covenants must be interpreted "in accordance with their plain meaning in favor of a grantee … and against a grantor or the one who enforces in his place."[17]

Although the Summers correctly state the law, they gloss over a number of other important principles regarding contract construction,[18] namely that (1) contractual language should be interpreted as it would be understood by an objective, reasonable third party,[19] and (2) contracts are read as a whole, and each provision and term should be given effect, where possible, so as not to render a part of the contract mere surplussage.[20] Applying those principles to the language at issue, it is clear that the restriction in the Summers' deed must encompass more than maintenance, and that the terms "care" and "up-keep" must be read – if possible – to have independent meaning distinct from "maintenance." Such a reading is both possible and the only reasonable reading of the language at issue.

---

[17] Opp'n at 5 (*citing Serv. Corp. of Westover Hills v. Guzzetta*, 2009 WL 5214876 (Del. Ch. Dec. 22, 2009)).

[18] Deed restrictions are contractual agreements and, as such, ordinary principles of contract law govern their interpretation. *Goss v. Coffee Run Condominium Council*, 2003 WL 21085388, at *7 (Del. Ch. Apr. 30, 2003).

[19] *Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010); *Emerging Europe Growth Fund, L.P. v. Figlus*, 2013 WL 1250836, at *4 (Del. Ch. Mar. 28, 2013).

[20] *Osborn*, 991 A.2d at 1159; *Emerging Europe Growth Fund, L.P.*, 2013 WL 1250836, at *4; *One Virginia Avenue Condominium Assoc. of Owners v. Reed*, 2005 WL 1924195, at *6 (Del. Ch. Aug. 8, 2005).

In my view, the only reasonable reading of the language is that the grantors used broad terms to shift to the owners of Walnut Ridge all the costs associated with the Private Road. "Care" and "up-keep" are terms that an objective, reasonable third party would understand to include a range of tasks, including the "road improvement" and "pavement rehabilitation and construction" associated with the Road Project.[21] In fact, it would be unreasonable to conclude – as the Summers urge – that the deed restriction applies narrowly and only to maintenance to the road, because it would mean that necessary work on the Private Road could not be accomplished, as the costs could not be shifted to the municipality, unlike a publicly dedicated road. In other words, the phrase "care, maintenance and up-keep" must be understood to encompass all work a majority of Walnut Ridge owners determine should be undertaken to maintain the use of the Private Road, because otherwise the road would fall into dis-repair and become useless, as no other entity is responsible for maintaining the road. Without the Private Road, of course, the lot owners could not reliably access their property.

When the original language of the deed restriction is considered, the meaning of the challenged language becomes even clearer. The language in the original deeds from the Friels required the lot owners to undertake a proportional amount of the "cost, care, maintenance and up-keep" of the Private Road. The

_____

[21] *See* Opp'n at 4.

word "cost" does not appear in the Summers' deed, but it does appear in their chain of title, and the Summers' deed was granted "subject … to the covenants, agreements, conditions, easements, reservations and restrictions" in the 1957 deed from the Friels. In my view, if the word "cost" can be read into the Summers' deed, as I believe it can under principles of actual and constructive notice, the Road Project certainly was a "cost" of the Private Road. Although I need not reach that issue, because I conclude the language in the Summers' deed unambiguously encompasses the Road Project, the use of the word "cost" in the original deeds supports the conclusion that the restriction encompasses all work on the Private Road.

This is not to say there are no limits or parameters on what costs could be shifted to the lot owners in the subdivision. To the contrary, a very obvious limitation, and perhaps the best one available, exists: a majority of the property owners must agree that the work should be undertaken. The property owners, who have a vested interest in the outcome, are the persons charged with determining whether and when to undertake "care, maintenance and up-keep" to the Private Road. That is precisely what happened here, and it is not for this Court to second-guess the discretion the grantors vested in the members of the community.

In their exceptions to my draft report on the pending motion, the Summers contend the restriction is ambiguous and therefore must be interpreted against the

drafters. Other than making an *ipse dixit* assertion regarding ambiguity, however, the Summers do not articulate the basis for their position. In my view, the phrase "care, maintenance and up-keep" is not ambiguous. When read and understood in the context of the fact that the costs of the Private Road cannot be shifted to anyone other than the lot owners, the only reasonable meaning of that phrase is that is refers to all road work agreed upon by a majority of the lot owners.

### C. The Association has standing to enforce the restriction.

The Summers argue that the Association does not have standing to enforce the restriction because none of the Walnut Ridge deeds mention a civic association or authorize "the community" to enforce the deed restrictions.[22] Although the Summers are correct as a factual matter that the deeds neither mention a civic association nor identify who may enforce the restrictions, they are incorrect that the Association lacks the authority to enforce the restriction. It is settled law in Delaware that "[w]here, under a general plan of development, the owner of property divides it into building lots and places upon them uniform restrictions, any subsequent owner of any of these lots may enforce the restrictions against any other grantee or present owner."[23] The Friels subdivided their property and placed upon each lot the uniform restriction regarding the cost of the Private Road, and, as

---

[22] Opp'n at 5-6.
[23] *Welshire, Inc. v. Harbison*, 88 A.2d at 121, 123 (Del. Ch. 1952).

a result, any lot owner may enforce the restrictions against another owner. Here, the Walnut Ridge owners have established a community association, comprised of members of the subdivision, who granted the Association the authority to, among other things, "protect the community rights of the inhabitants [of Walnut Ridge] with regard to road maintenance, deed restrictions, and other matters of community interest."[24] In addition, the members of the Association voted at the 2013 annual meeting to demand payment from the Summers based on the deed restriction and pursue litigation if the matter could not be resolved privately.[25] In my view, therefore, the Association has the authority to enforce the restriction against the Summers.

### D. The Summers had more than sufficient opportunity to develop the record.

Finally, the Summers urge me to deny the Association's motion because "the law or its application would be clarified by a more thorough development of the record."[26] The Summers do not, however, explain what additional discovery they would undertake to develop the record, nor is it apparent to me what additional information would clarify the rather straightforward issue presented by this case. In addition, the Summers filed this action more than two years ago. In

---

[24] Motion Ex. 1 (Walnut Ridge Community Assoc., Inc. By-Laws, Art. II).
[25] *Id*. Ex. 3 at WR 3.
[26] Plaintiffs' Opening Br. in Support of Exceptions to Draft Report at 11-12.

that time, they propounded one set of interrogatories. According to the docket, the Summers did not pursue any other discovery. A vague allusion to further development of the record, without more, does not persuade me that additional development of the record would illuminate the issues in this case.

## CONCLUSION

For the foregoing reasons, I believe that the Summers properly were assessed for 1/18th the cost of the Road Project and I recommend that the Court grant the Association's motion for summary judgment. This is my final report and exceptions may be taken in accordance with Rule 144.

Sincerely,

/s/ *Abigail M. LeGrow*
Master in Chancery